IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Cr. No.: __1:15-cr-10082 JDB__ |
| vs. | ) |
| BRENDA SENSING | ) 18 U.S.C. § 371 |
| Defendant. | ) |

# INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

## INTRODUCTION

At all times material to this Information:

1.  Along with her husband, **BRENDA SENSING** was operating Adult and Children Medical Clinic (hereinafter "ACMC") in Guntown, Mississippi.

2.  Defendant **BRENDA SENSING** and her husband employed Provider 1 as a family nurse practitioner at ACMC.

3.  Defendant **BRENDA SENSING** was employed as a salesperson by Jaspan Medical Systems (hereinafter "JMS"), a durable medical equipment company with an office in Jackson, Tennessee. As a salesperson for JMS, defendant **BRENDA SENSING** was paid commissions for sales of wheelchairs and other medical devices to patients and purported patients of ACMC. Although defendant **BRENDA SENSING** was technically employed by JMS, it was instead defendant **BRENDA SENSING's** husband who performed virtually all work related to sales of JMS equipment. Defendant **BRENDA SENSING** and her husband arranged for defendant **BRENDA SENSING** to

be listed as the employee to evade tax implications if the payments had been made to defendant **BRENDA SENSING's** husband.

## HEALTH CARE BENEFIT PROGRAMS

4. Section 24(b) of Title 18, United States Code, defines a "health care benefit program" as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service Is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." Medicare, Medicaid and TriStar are Health Care Benefit Programs.

## MEDICARE PROGRAM

5. The federal Medicare program is a medical insurance program funded by the United States government, which provides reimbursement for medical care to persons over the age of 65 and certain other persons, including some disabled persons under the age of 65, without regard to personal financial means or income.

6. Medicare is administered by the United States Department of Health and Human Services (HHS) through its division, the Centers for Medicare and Medicaid Services (CMS).

7. One of Medicare's components, Medicare Part B, provides medical insurance coverage for eligible patients receiving physician services, outpatient care, home health services and other medical services. Among items covered under Medicare Part B is provision of durable medical equipment that is necessary for a patient's treatment and has been ordered by licensed medical doctors or other qualified health care providers. Durable medical equipment is designed for repeated use and for

a medical purpose, including such items as an electric or motorized wheelchair, also known as a "power wheelchair."

8. Medicare will pay for a power wheelchair on behalf of a Medicare patient only if a power wheelchair is prescribed as necessary for the patient by a qualified physician, physician's assistant, nurse practitioner or clinical nurse specialist (collectively, "providers"). Pursuant to Section 302(a)(2) of the Medicare Prescription Drug, Improvement and Modernization Act of 2003, a power wheelchair may not be ordered for a patient unless a provider conducts a face-to-face examination of the patient. The provider evaluates the necessity of the power wheelchair by considering such factors as whether without the use of a power wheelchair, the patient would otherwise be bed or chair confined; whether the patient's condition is such that a wheelchair is medically necessary; whether the patient is unable to operate a wheelchair manually; and whether the patient is capable of safely operating the controls of the power wheelchair. A patient who requires a power wheelchair usually is totally non-ambulatory and has severe weakness of the upper extremities due to a neurologic or muscular disease/condition.

9. The patient must at minimum meet all of the following three basic coverage criteria to meet medical necessity requirements: (1) the patient has a mobility limitation that significantly impairs his or her ability to participate in one or more Mobility-Related Activities of Daily Living (MRADLs) such as toileting, feeding, dressing, grooming, and bathing in customary locations in the home. A mobility limitation is a limitation that (a) prevents the patient from accomplishing an MRADL entirely or within a reasonable time frame; or (b) places the patient at a reasonably determined heightened

risk of morbidity or mortality as a result of the attempts to perform an MRADL; (2) the patient's mobility limitation cannot be resolved sufficiently and safely by using an appropriately fitted cane or walker; and (3) the patient does not have sufficient upper extremity function to self-propel an optimally configured manual wheelchair in the home to perform MRADLs during a typical day. Limitations of strength, endurance, range of motion or coordination, and presence of pain; or deformity or absence of one or both upper extremities are relevant to the assessment of upper extremity function.

10. Once a provider writes a prescription for a power wheelchair, the patient can obtain the power wheelchair from a durable medical equipment supplier, which makes a claim to the regional Medicare contractor to obtain payment for the power wheelchair and provides the power wheelchair to the patient. The durable medical equipment supplier must obtain from the provider, among other things, a prescription and documentation of the face-to-face examination. Documentation of the face-to-face examination is generally made in progress notes, which must document why the patient needs a power wheelchair. The progress notes must be signed and dated by the provider making the evaluation of the payment. Progress notes are frequently accompanied by addenda that provide additional information about the face-to-face evaluation and the patient's need for a power wheelchair. The durable medical equipment must maintain files containing the prescription and documentation of the face-to-face examination.

## COUNT ONE

11.   Paragraphs 1 through 10 are incorporated herein by reference.

### The Conspiracy

12.   Beginning in or before February 2011 and continuing through at least June 2013, in the Western District of Tennessee, and elsewhere, defendant **BRENDA SENSING** and her husband did knowingly and intentionally combine, conspire, confederate and agree among themselves and with each other, and with others known and unknown to the United States Attorney, to commit offenses against the United States, to wit:

(a)   Health care fraud, that is, knowingly and willfully executing, and attempting to execute a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the control of Medicare, a healthcare benefit program, as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health benefits, items and services, in violation of Title 18, United States Code, Section 1347; and

(b)   Paying and receiving illegal remuneration, that is, knowingly and willfully offering, paying and receiving any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person or from any person or entity to induce such person to refer an individual or as an inducement to refer individuals for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program, namely, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

### Object of the Conspiracy

13. It was the object of the conspiracy that defendant **BRENDA SENSING** and other participants in the conspiracy, known to the United States Attorney, unlawfully enriched themselves by, among other things, receiving commission payments from JMS for sales of wheelchairs for patients referred to JMS by ACMC.

### Manner and Means of the Conspiracy and Scheme to Defraud

14. The manner and means by which the conspiracy and the scheme and artifice to defraud functioned is more particularly set forth as follows:

   (a) Defendant **BRENDA SENSING's** husband paid three individuals, identified as SN, EC and ND (collectively, "the runners") $50 per patient to identify potential power wheelchair patients who had Medicare.

   (b) After one of the runners identified a potential patient, defendant **BRENDA SENSING's** husband accompanied the runner to the patient's residence to fill out paperwork.

   (c) For a period of time, after identifying a patient, defendant **BRENDA SENSING's** husband generally brought the patient to ACMC to be seen by Provider 1 at the clinic. Sometimes Provider 1 went to the patient's home.

   (d) Later, defendant **BRENDA SENSING** and her husband began forging Provider 1's signature on the progress notes and prescriptions. Defendant **BRENDA SENSING's** husband instructed an ACMC clerical employee to enter these patients' names into ACMC computers and to keep the fact that the employee was doing so from Provider 1.

   (e) Defendant **BRENDA SENSING** and her husband were aware that some patients did not need and could not meet the requirements for a power wheelchair.

   (f) After a patient's progress note and prescription were signed, either by Provider 1 or by forgery, the documents were forwarded to JMS in Jackson, Tennessee. In some cases, defendant **BRENDA SENSING** and her husband received facsimile communications from another conspirator to alter patient addenda or other documents without Provider 1's involvement or knowledge in order to justify billing for a medical device.

   (g) Defendant **BRENDA SENSING** was then paid a commission for each JMS sale of a wheelchair to an ACMC patient.

## Manner and Means of the Conspiracy and Scheme to Defraud

15. On or about the dates set forth in the table below, during the pendency of the conspiracy, the defendants engaged in the following overt acts, in the Western District of Tennessee and elsewhere, at least one of which furthered and effected the goals of the combination, conspiracy, confederation and agreement:

| Overt Act No. | Date | Act |
| --- | --- | --- |
| 1 | 1.25.2012 | Defendant **BRENDA SENSING** and her husband paid EC $50 for the referral of a patient identified by the initials LY. |
| 2 | 11.26.2012 | Defendant **BRENDA SENSING** forged the signature of an ACMC provider on a progress note for an ACMC patient to facilitate ordering a wheelchair for the patient. |
| 3 | 12.14.2012 | Defendant **BRENDA SENSING** was paid $6,750.00 in commission by JMS for sales of durable medical equipment provided to ACMC patients. |
| 4 | 1.14.2013 | Defendant **BRENDA SENSING** and her husband created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient KL, and forged the provider's signature on the addendum. |
| 5 | 1.14.2013 | Defendant **BRENDA SENSING** and her husband created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient ST, and forged the provider's signature on the addendum. |
| 6 | 1.14.2013 | Defendant **BRENDA SENSING** and her husband created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient DM, and forged the provider's signature on the addendum. |
| 7 | 1.14.2013 | Defendant **BRENDA SENSING** and her husband created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient |

| Overt Act No. | Date | Act |
|---|---|---|
|  |  | SB, and forged the provider's signature on the addendum. |
| 8 | 1.14.2013 | Defendant **BRENDA SENSING** and her husband created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient MS, and forged the provider's signature on the addendum. |
| 9 | 1.14.2013 | Defendant **BRENDA SENSING** and her husband created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient BS, and forged the provider's signature on the addendum. |
| 10 | 1.28.2013 | Defendant **BRENDA SENSING** and her husband received a facsimile from a conspirator directing them to edit the addenda for KL, ST, DM, SB, MS and BS, each of which efendant **BRENDA SENSING** and her husband had created on or about January 14, 2013. |

All in violation of Title 18, United States Code, Section 371.

OCTOBER 9, 2015
DATE

*[signature]*

**EDWARD L. STANTON III**
**UNITED STATES ATTORNEY**